IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| GEORGE CLARK JR. | § | |
| v. | § | CIVIL ACTION NO. 9:07cv290 |
| DR. BEN RAIMER, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff George Clark Jr., an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the jail.  The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c).

An evidentiary hearing was conducted on February 5, 2008, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).  At this hearing and in his complaint, Clark says that on May 23, 2007, he slipped on some stairs at the Eastham Unit and fell, injuring his hand.  He was taken to the infirmary, where he was told that he had a sprain, given a pain medication called ibuprofen, and sent back to his cell.  Two days later, he returned to the clinic and had his hand X-rayed, and was told that it was broken.  He saw a physician's assistant named Maria Culley, who looked at his hand and gave him a wrap for his hand, with a small splint, and a sling.  She told him that the swelling in his hand needed to go down.

On June 7, Clark said, he was going to the University of Texas Medical Branch Hospital in Galveston for a chronic care appointment for COPD (chronic obstructive pulmonary disease) and emphysema.  He told the medical personnel that he was in a lot of pain and they called the Eastham Unit about it.  On June 15, 2007, he was sent back to the hospital in Galveston for his hand.  He saw some interns, and they told him that it was "knitting" and that he should go to the occupational

1

therapy clinic.  At the clinic, Clark says, he was given a partial cast and told to immobilize it.  Clark wanted to see a doctor, but was not able to at that time.

When he returned to the Eastham Unit, Clark said, there was a lockdown in progress.  On June 20, he saw Culley again, who told him that his hand would be OK and that all she could do was give him Tylenol.  Clark testified that he believed that he should have had surgery on his hand.  He said that his hand was hurting and that he was told that surgery would be too expensive.

Clark stated that he sued Dr. Ben Raimer because Dr. Raimer was the head physician for the University of Texas Medical Branch.  He said that he had written a letter to Dr. Raimer, but that it was returned because the address was incorrect.  He says that he sued Dr. Betty Williams, the head doctor at the Eastham Unit, because after he injured his hand, he overheard Dr. Williams telling a physician's assistant to "give him ibuprofen, it was sprained, and she did not want to fool with it."

Next, Clark said that he sued Christy Dudley, a medical assistant, because he sent I-60 inmate request forms complaining about his hand, and she replied that he had been seen.  He sued  assistant practice managers named Shanta Crawford and Katerina Connell because they also replied to his requests by saying that he had already been seen.

Clark said that he sued Culley, the physician's assistant, because she told him that there was nothing more that she could do.  He sued a graduate nurse named Rebecca Gustafson because she gave him Tylenol and ibuprofen, and he wanted something which would be more effective.  Finally, Clark said, he sued Brad Livingston, Director of TDCJ-CID, because of Livingston's position of authority and because he wrote Livingston a letter which was returned. Clark stated that he was told that he would have to go to the Byrd Unit, which he said was a way-station on the way to the hospital in Galveston.

Nurse Barbara Hughes, a correctional nurse also present at the Spears hearing, testified under oath concerning the contents of Clark's medical records.  Nurse Hughes said that the X-ray showed

what she described as a "boxer's fracture."[1] This was treated with an ulnar splint and a sling. Follow-up X-rays were done on August 2, 2007, and these showed a healing boxer's fracture.

Nurse Hughes stated that this is the normal treatment for a boxer's fracture. She said that although Clark had some angulation (i.e. the bones were not healing together in a perfectly straight way), this would not affect the function of his hand. Because Clark is 73 years old, Nurse Hughes stated that he could suffer some arthritis as a result of the broken bone, but that the injury should not otherwise still be painful.

The Court has received and reviewed copies of Clark's medical records. These records show that on May 23, 2007, he was seen by a nurse named Martin with a complaint that he had slipped on a stair well. The nurse noted swelling at the base of the left hand at the knuckle, but there was no deformity and no swelling in the little finger; the nail beds were pink and the skin was warm and dry. An X-ray was ordered and Clark was given a prescription for ibuprofen (200 mg).

On May 25, Clark saw Culley, who stated that the X-ray had showed a fracture of the 5th metacarpal (by the little finger). She observed swelling with bruises and a palpable area of tenderness at the 5th metacarpal, and gave him a splint, a wrap, and a sling, as well as a prescription for 600 mg of ibuprofen. Culley also requested an orthopedic consult.

On June 1, Clark again saw Culley, complaining that his hand broken, no one is doing anything for him, and that "Motrin [ibuprofen] is not a pain medication." She noted that he was not wearing the sling properly and that his left hand was dangling out of it. He was shown the proper way to wear the sling to prevent his hand from swelling, but the notes indicate that he moved the splint back to the improper position.

---

[1]A "boxer's fracture" is a fracture of the metacarpal bones connecting the ring finger or the little finger to the wrist. The normal treatment is through immobilization of the hand with a splint, and pain is normally managed through anti-inflammatory medications such as Tylenol or ibuprofen. *See* http://www.emedicinehealth.com/boxers_fracture/article_em.htm

On June 15, Clark was seen in the hospital in Galveston.  He was referred to the occupational therapy clinic, which gave him a splint, and followup X-rays were ordered. These X-rays showed that the fracture was healing.

Legal Standards and Analysis

Clark complains of the medical care which he received for his broken hand.  The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not.  Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989).  However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation.  Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim.  Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991).  Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action.  Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993).  The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs.  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs.  Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute

4

examination; the inmate committed suicide two and a half hours later.  The Fifth Circuit, in reversing

a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet.  It is indisputable that
> an incorrect diagnosis by prison medical personnel does not suffice to state a claim
> for deliberate indifference.  Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).
> Rather, the plaintiff must show that the officials "refused to treat him, ignored his
> complaints, intentionally treated him incorrectly, or engaged in any similar conduct
> that would clearly evince a wanton disregard for any serious medical needs."  Id.
> Furthermore, the decision whether to provide additional medical treatment "is a
> classic example of a matter for medical judgment."  Estelle v. Gamble, 429 U.S. 97,
> 107 (1972).  And, "the failure to alleviate a significant risk that [the official] should
> have perceived, but did not," is insufficient to show deliberate indifference.  Farmer
> v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, it is apparent that Clark has not been the victim of deliberate indifference to his

serious medical needs.  He has not shown that prison officials refused to treat him, ignored his

complaints, intentionally treated him incorrectly, or engaged in any similar conduct evincing a

wanton disregard for serious medical needs.  Instead, the evidence, including Clark's testimony at

the hearing, showed that he received a considerable amount of medical treatment, and that the

treatment which he received was in accordance with accepted ways of treating the injury which he

suffered.  The fact that he disagreed with the treatment that he received, based on his personal belief

that he should have surgery on his hand, and that the pain medications which he was receiving were

not as effective as he would have liked, does not show that a constitutional violation occurred.

Johnson v. Treen, 759 F.2d at 1238.   There is no doubt that a broken bone in the hand would be

painful, particularly given Clark's age and the likelihood of arthritis in his hand.  However, Clark

has simply failed to show that he was the victim of deliberate indifference to his serious medical

needs, and so his claim on this point is without merit.

Similarly, the fact that Dr. Williams was heard telling a physician's assistant on May 23 that

Clark's hand was only sprained and that she did not want to "fool with it" does not by itself show

deliberate indifference to his serious medical needs.  Despite this remark, X-rays were ordered of his

hand, and the medical staff learned that Clark's hand was in fact broken.  Appropriate treatment was then provided, including a splint, a wrap, and a sling.

Clark also complained that some of the facility practice managers responded to his requests by stating that he had already been seen.  He has failed to show any constitutional violation in this regard.  As noted above, he received regular medical care for his injury.  In addition, the fact that he did not receive the responses to his requests which he wanted does not show a constitutional violation.  *See* Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005) (inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction); *accord*, Edmond v. Martin, et al., slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished).  This claim is without merit.

Finally, Clark sued several supervisory officials, including Brad Livingston and Dr. Ben Raimer of UTMB.  The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases.  Williams v. Luna, 909 F.2d 121 (5th Cir. 1990).  A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation.  Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, Clark has not shown that the supervisory officials whom he sues were personally involved in a constitutional deprivation, that a causal connection exists between wrongful conduct by the supervisor and a constitutional deprivation, or that a constitutionally deficient policy was implemented which was the moving force behind a violation.  In fact, Clark has not shown that a constitutional violation occurred at all, and the Fifth Circuit has held that absent primary liability, there can be no supervisory liability.  Gibbs v. King, 779 F.2d 1040, 1046 n.6 (5th Cir.), *cert. denied* 476 U.S. 1117 (1986).  Clark's claims against the supervisory officials are without merit.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees.  Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory.  Neitzke v. Williams, 490 U.S. 319, 325-7 (1989).  A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Neitzke v. Williams, 490 U.S. 319, 327, (1989), citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Clark's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted.  Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b).  See generally Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993).  It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous.  28 U.S.C. §1915A(b).  It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **6**   day of **February, 2008.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

7